James B. McCOY, et al., Plaintiffs,

v.

WHIRLPOOL CORP. et al., Defendants.

Nos. 02–2064–KHV, 02–2229–KHV,
02–2230–KHV, 02–2231–KHV.

United States District Court,
D. Kansas.

March 5, 2003.

Dale L. Davis, Springfield, MO, Karen A. Eager, Lynn R. Johnson, Shamberg, Johnson & Bergman, Chtd., Kansas City, MO, for plaintiffs.

Hal D. Meltzer, Baker, Sterchi, Cowden & Rice, L.L.C., Overland Park, KS, James S. Owens, Jr., Mary A. Palma, Nall & Miller, L.L.P., Atlanta, GA, for defendants.

### MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

Pending before the Court is Plaintiffs' Motion to Compel (doc. 69). Upon consideration of the written briefs submitted and the oral arguments presented at the February 19, 2003 hearing, the Court will grant selected portions of the Motion and will defer ruling

on the remaining portions of the Motion pending receipt of additional information from Defendants as requested by the Court in the hearing.

### Relevant Background

The dishwasher at issue in this property damage product liability case (and companion wrongful death, survival action and personal injury cases) is a Kenmore dishwasher, Model No. 665.16761690, Serial No. FF2516092. This dishwasher is classified as a New Generation premium model. It was manufactured by defendant Whirlpool Corporation ("Whirlpool") during the week of June 16, 1996, was purchased by Plaintiffs at defendant Sears, Roebuck & Co.'s ("Sears") on August 26, 1996 and was installed in the McCoy residence on August 29, 1996. Plaintiffs allege this dishwasher ("the McCoy dishwasher") was the cause and origin of the February 16, 2000 fire that destroyed the McCoy residence and killed their daughter, Emily McCoy.

The New Generation dishwashers were first placed on the market for sale by Whirlpool in late 1990. Whirlpool manufactured both a New Generation premium model and a New Generation base model. From 1992 to 1993, Whirlpool initiated several design changes within the New Generation line of dishwashers:

- In May 1992, Whirlpool began using a different door interlock micro-switch for all New Generation premium model dishwashers, which utilized a plunger that allegedly was "fail safe" if overheating occurred as a result of electrical resistive heat at the door switch assembly;

- In December 1992, Whirlpool changed the latch bolt material to one that was fire retardant polypropylene; and

- In May 1993, Whirlpool changed the AMP flag terminal at the door interlock micro-switches to an ETCO plated flag terminal.

In March 1996, Whirlpool recalled New Generation premium models manufactured from approximately June 1991 through April 1992 based on reported incidences of overheating and fire hazards. Although the recall program did not include all New Generation premium model dishwashers manufactured up to May 1993, Whirlpool allegedly determined the potential product failure was a result of the AMP flag terminal, which, as noted above, was replaced by the ETCO flag terminal in May 1993. Contrary to this alleged determination by Whirlpool, Plaintiffs contend that none of the three design changes resolved the overheating and fire hazard in the New Generation premium model dishwashers. In the pending Motion to Compel, Plaintiffs seek discovery in order to prove this contention.

At the February 19, 2003 hearing, the parties summarized the disputed discovery requests into the following categories: (1) Wire diagrams and design drawing; (2) Field Returns (burned or damaged in fire and returned), Field Return Photos and Field Return Files; (3) Service Records from Sears; (4) Claims and Lawsuits for New Generation premium dishwashers manufactured prior to 1993 and for all New Generation base dishwashers; (5) documents, remnants and videos from any induced burn testing; and (6) personal records. The Court will discuss each of these categories in turn.

### Discussion

1. *Wire Diagrams and Design Drawings*

With regard to this category of documents, the parties agreed at the hearing that Defendant Whirlpool will produce exemplar wire diagrams and design drawings for

- A New Generation base model dishwasher manufactured at or near the time of the McCoy dishwasher;

- A New Generation premium model electromechanical dishwasher manufactured during the time period from December 1992 to May 1993; and

- A New Generation premium model dishwasher electronic manufactured at or near the time of the McCoy dishwasher.

Accordingly, Plaintiffs' Motion to Compel with regard to this category of documents will be granted to the extent of the parties' agreement.

## 2. Field Returns

This category of documents and tangible items consists of photos, files and burned or damaged dishwashers/component parts that were burned in a fire and returned to Whirlpool. Defendant Whirlpool states it has produced the requested information and tangible things for all New Generation premium dishwashers that included some sort of allegation that the fire started in the door area of the dishwasher. Whirlpool has not, however, produced the requested information and tangible things for New Generation base model dishwashers or for Kitchen Aid models. Whirlpool argues these documents and things are not relevant and, even if they were marginally relevant, the burden imposed in producing them outweighs any such marginal relevance.

Given this allegation of undue burden, the Court ordered Whirlpool to submit to the Court a written letter estimating the number of base model burned or damaged dishwashers/component parts that were burned in a fire and returned to Whirlpool, as well as the number of accompanying files and/or photos. The Court requested this information in order to accurately balance the projected burden against the relevancy of the information sought. Because the Court has not yet received the requested information, it will defer ruling on this portion of the Motion to Compel.

## 3. Service Records

Plaintiffs have requested defendant Whirlpool and defendant Sears be compelled to produce all service records that relate to—or in any manner pertain to—any incident of overheating and/or fires in the area of the electrical front panel of all New Generation premium model dishwashers manufactured from May 1993 through December 2001. In support of their request, Plaintiffs state they possess testing data demonstrating that the micro switch sometimes fails in the closed position—as opposed to the open position—pursuant to excessive heating. In order to disprove Defendants' position that the micro-switch and ETCO terminal solved all potential fire problems, Plaintiffs assert they have the right to discover the context in which a micro-switch was serviced and, if the micro-switch failed, whether it did so in an open or closed position.

Defendant Whirlpool noted in the hearing that it has produced all of the requested service records. Defendant Sears, however, has not produced any of the requested documents, stating it would be unduly burdensome for it to identify and produce the requested information and, even if it did, the results are only marginally valuable to the issues presented in this lawsuit. As a result, Defendant Sears requests the Court refrain from ordering production of these service records. In the event the Court should grant Plaintiffs' request here, Defendant Sears alternatively requests the Court order Plaintiffs to pay any and all costs associated with identification and production of the requested information.

Given this allegation of undue burden and alternative request for costs, the Court ordered Whirlpool to submit to the Court a written letter describing the extent of the burden upon Sears to produce the service records requested in terms of procedure, time and expense. The Court requested this information in order to accurately balance the projected burden against relevancy of the information sought. Because the Court has not yet received the requested information, it will defer ruling on this portion of the Motion to Compel.

## 4. Claims and Lawsuits

■ Here, Plaintiffs seek documentation regarding all claims and/or litigation files involving New Generation premium and base models alleging that a wiring defect within the door latch assembly caused overheating or caused a fire. Defendant Whirlpool states

it has produced the requested information for all New Generation premium dishwashers that included some sort of allegation that the fire started in the door area of the dishwasher. Whirlpool has not, however, produced the requested information for New Generation base model dishwashers or for Kitchen Aid models. Whirlpool argues these documents are not relevant and, even if they were marginally relevant, the burden imposed in producing them outweighs any such marginal relevance.

As noted above, relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.[1] The Court finds the claims and lawsuit/litigation files for all New Generation base dishwashers and Kitchen Aid ·dishwashers that either include some sort of allegation that the fire started in the door area of the dishwasher or that the fire's origin is unknown are both relevant on their face. Again, the Court finds comparison of burn and melting patterns from a base model and from a Kitchen Aid model to a premium model is relevant on its face to the expert's testimony.

Given this finding, it is now Whirlpool's burden to establish the requested discovery (1) does not come within the broad scope of relevance as defined under Rule 26(b)(1), or (2) is of such marginal relevance that the potential harm the discovery may. cause would outweigh the presumption in favor of broad disclosure. In support of its argument that the requested discovery is not relevant, Whirlpool again argues the requested discovery involves dishwashers that are not substantially similar to the McCoy dishwasher.

The Court is not persuaded by Whirlpool's arguments. First, Plaintiffs state they do not seek the requested discovery in order to establish the base and premium models are substantially similar, but instead seek to compare the base and premium models. The disputed discovery request deals with claims and litigation for base models and Kitchen Aid models having fires that potentially started in the door. Regardless of whether such information ultimately is admissible at trial,[2] the Court finds Plaintiffs have a right to discover information to support their expert's opinion with regard to overheating and fire issues.

Because the Court finds the requested discovery comes within the broad scope of relevance as defined under Rule 26(b)(1), the only remaining argument presented by Whirlpool in resisting production of the requested information is that such information is of such marginal relevance that the burden to produce the requested information outweighs the presumption in favor of broad disclosure. Whirlpool has submitted no affidavit or other proof demonstrating that responding to the requests at issue would impose an undue burden. In balancing the relevancy of the requested information against the alleged burden, the Court finds the requested information should be produced; thus, the Court will grant Plaintiffs' Motion to Compel on this issue.

## 5. Testing

■ Plaintiffs have requested documents and tangible things related to induced burn testing of all dishwashers designed by Defendant Whirlpool, regardless of whether they are substantially similar models. In support of their request, Plaintiffs state that have a right to compare fire and burn patterns of other dishwashers to the fire and/or burn pattern described by Mrs. McCoy in the McCoy dishwasher.

Defendant Whirlpool states that, beyond the one video and associated documentation already produced, it is unable to find documents or videos regarding induced burn test-

---

**1.** *Sheldon v. Vermonty,* 204 F.R.D. · 679, 689–90 (D.Kan.2001) (citations omitted).

**2.** The Court notes that the touchstone to Plaintiffs' discovery requests is not that such discovery will result in evidence which is, or even may be, admissible at trial, but rather that such discovery is "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

ing of substantially similar models. Whirlpool goes on to argue that dissimilar models are not relevant and, even if they were marginally relevant, the burden imposed in producing them outweighs any such marginal relevance.

The Court finds information, videos and remnants from induced burn testing of Whirlpool dishwashers, regardless of whether the model is substantially similar to the McCoy dishwasher model, are relevant on their face for burn pattern comparison purposes. In balancing this relevancy against the alleged burden of producing what Whirlpool estimates is not more than information regarding ten laboratory tests, the Court finds the requested information, videos and remnants should be produced; thus, the Court will grant Plaintiffs' Motion to Compel on this issue.

### 6. Personal Records

Plaintiffs have requested all personal files of various current and past Whirlpool employees. The documents requested are those that relate to the door latch/door switch assembly and/or any component parts of the door latch switch assembly of New Generation premium model and base model dishwashers. Whirlpool objects to the request asserting that its employees do not maintain "personal fields" related to the subject matter of the request. Further, Whirlpool represents it has conducted a thorough search for documents responsive to this request in its possession and that all such documents have been produced.

Given the circumstances presented, the Court hereby orders Whirlpool to identify—of the twenty-one employees identified by Plaintiffs in the discovery requests at issue—which employees have left Whirlpool's employ and to contact such former employees to ascertain whether they took responsive documents with them when they left. If additional documents are discovered, Whirlpool shall produce such documents to Plaintiffs. If, however, no additional documents are discovered, Whirlpool shall file a pleading with the Court certifying compliance.

### Conclusion

Based on the discussion above, Plaintiffs' Motion to Compel is granted in part and deferred in part. It is hereby ordered that Plaintiffs' Motion is granted to the extent that

(1) Defendants shall make available for inspection or produce wire diagrams and design drawings as specifically agreed by the parties in the February 19, 2003 hearing;

(2) Defendants shall make available for inspection or produce documentation reflecting claims and/or litigation files involving New Generation premium and base models alleging a wiring defect in the door area of the dishwasher;

(3) Defendants shall make available for inspection or produce documents and tangible things from any induced burn testing of a dishwasher designed by Defendant Whirlpool; and

(4) Defendants shall identify—of the twenty-one employees identified by Plaintiffs in the discovery requests at issue—which employees have left Whirlpool's employ and shall contact such former employees to ascertain whether they took responsive documents with them when they left. If additional documents are discovered, Whirlpool shall produce such documents to Plaintiffs. If, however, no additional documents are discovered, Whirlpool shall file a pleading with the Court certifying compliance.

IT IS FURTHER ORDERED THAT Plaintiffs' Motion to Compel is deferred with regard to Plaintiffs' request for Whirlpool field returns and Sears service records. The Court will rule on these portions of the Motion after reviewing the additional information requested from Defendants in the February 19, 2003 hearing.

IT IS SO ORDERED.